UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELOY MASCORRO, Plaintiff, v. THE COUNTY OF SAN DIEGO, et al., Defendants. | Case No.: 21-cv-2012-RSH-DDL<br>**ORDER ON MOTION FOR RECONSIDERATION AND MOTION TO DISMISS**<br>[ECF Nos. 76, 83] |

Before the Court are Plaintiff's motion to reconsider the dismissal of his state law claims and Defendant County of San Diego's ("County's") motion to dismiss Plaintiff's Second Amended Complaint ("SAC," ECF No. 80). ECF Nos. 76, 83. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court denies Plaintiff's motion for reconsideration and grants in part and denies in part the County's motion to dismiss.

## I. BACKGROUND

### A. Plaintiffs' Allegations

The instant action arises from the alleged conditions of Plaintiff's confinement during five detention incidents. The Second Amended Complaint ("SAC") alleges as follows.

***1. First Incident***

On or about March 28, 2020, Plaintiff alleges he was held in a 50-degree jail cell in downtown San Diego without soap, toilet paper, or writing materials. SAC ¶ 9. According to Plaintiff, he was subsequently transferred to the George Bailey detention center despite reporting injuries and fear of attack—concerns which jail staff allegedly disregarded. *Id*. During the transfer, Plaintiff was allegedly subjected to prolonged shackling causing "extreme physical pain." *Id*. Once at George Bailey, Plaintiff alleges he was attacked by two inmates and sustained head injuries and concussion symptoms. *Id*. Jail staff allegedly failed to perform a concussion protocol and, upon Plaintiff's release, also refused to call an ambulance. *Id*. Plaintiff was transported to a hospital after calling 911 himself, whereupon a physician purportedly confirmed his injuries and symptoms. *Id*. Plaintiff later notified the San Diego District Attorney's Office of the incident by email in May 2020, but alleges no investigation or remedial action followed. *Id*.

***2. Second Incident***

On or about August 30, 2020, Plaintiff alleges he was held in various jail cells in downtown San Diego without soap, toilet paper, or access to a clock. *Id*. ¶ 10. Plaintiff further alleges that his requests for writing materials, grievance forms, and medical assistance in light of pain caused by lying on metal benches were denied or ignored. *Id*. According to Plaintiff, he was then transferred to a separate facility with similar conditions before being taken to George Bailey. *Id*. Once there, an inmate gang leader allegedly told Plaintiff that the facility was under the inmate control and imposed restrictions on where Plaintiff could sit, walk, and use the phones. *Id*. Other inmates allegedly demanded to see Plaintiff's "wrist band information." *Id*. Plaintiff alleges that these interactions occurred within earshot of jail deputies, who did not intervene. *Id*. One or two days later, Plaintiff was allegedly awakened early in the morning, transported to the downtown San Diego jail facility, held there for approximately 10 hours without an arraignment, returned to George Bailey, and later released. *Id*.

///

### *3. Third Incident*

On or about September 20, 2020, Plaintiff alleges that, after his arrest, he told a nurse his arm was in extreme pain and possibly broken. *Id*. ¶ 11. The nurse allegedly did not examine him and stated his arm did not appear broken. *Id*. Plaintiff was then placed in a holding cell kept at approximately 50 degrees without a clock or working phones. *Id*. According to Plaintiff, several deputies denied his requests for pencil and paper to document his medical complaints. *Id*. Upon his release approximately 18 hours later, Plaintiff allegedly asked a lobby employee to call an ambulance because he could not move his arm and was in "extreme pain." *Id.* The employee refused and threatened to have Plaintiff arrested if he did not leave. *Id*. Several deputies then allegedly surrounded Plaintiff and told him to walk to the hospital. *Id*. When Plaintiff was eventually transported to the hospital, doctors purportedly confirmed he had fractured his left elbow. *Id*.

### *4. Fourth Incident*

On or about October 6, 2020, Plaintiff alleges he was detained at San Diego Central Jail while visibly injured and in extreme pain. *Id*. ¶ 12. During intake, a nurse allegedly refused to examine or treat him. *Id*. Plaintiff was then held for more than 20 hours in multiple "holding tanks" that were kept at approximately 50 degrees without blankets, outer clothing, soap, or toilet paper. *Id*. He alleges he was forced to sit or lie on cold metal benches thereby aggravating his injuries. *Id*. Plaintiff was later placed in a holding cell where he requested protective custody and a wheelchair from a deputy identified as G.C.G. or C.G.C. *Id*. This deputy allegedly accused Plaintiff of lying, threatened to call a K-9 unit to "attack and torture" him, grabbed Plaintiff's fractured arm twisting his wrist, and dragged him to the fingerprint area. *Id*. A supervisor later allegedly told Plaintiff that he had been "watching on the cameras the whole time" and accused him of lying. *Id*. Plaintiff submitted an e-mail complaint concerning this deputy on March 6, 2021. *Id*. In a June 9, 2021 e-mail with an attached letter, Internal Affairs stated that it had reviewed surveillance footage and found "no justification for an administrative investigation." *Id.*

///

### *5. Fifth Incident*

On or about December 1, 2023, Plaintiff alleges he sustained physical injuries during his arrest and was transported to a hospital for medical evaluation. *Id.* ¶ 13. After being cleared, he was transported to the Vista detention facility without mobility accommodation or medical bedding. *Id.* At the Vista facility, Plaintiff alleges that deputies denied or deferred his requests for writing materials. *Id.* According to Plaintiff, the facility was kept at a "freezing temperature," lacked clocks or windows, and offered only a cold floor or metal bench for him to sit or lie on, thereby aggravating his injuries. *Id.* Plaintiff repeatedly used the call button to request toilet paper and soap, but received no response. *Id.* After approximately 15 hours, Plaintiff was moved to another cell, where an employee allegedly threatened to prevent his release if he continued using the call button. *Id.* A deputy arrived about 20 minutes later and provided only toilet paper. *Id.* Upon release, Plaintiff attempted to file a formal complaint at the lobby of the Vista jail. *Id.* Although lobby staff gave him a complaint form, they allegedly refused to accept it once completed, instead telling Plaintiff the form had to be mailed. *Id.* On December 4, 2023, Plaintiff submitted three electronic complaints regarding the "Fifth Incident" through the San Diego County Sheriff's Department's online portal. *Id.*

## B. Procedural Background

### *1. Original Complaint*

On November 30, 2021, Plaintiff, proceeding pro se, filed this action against the County, related County entities, and unnamed deputy sheriffs and jail staff. ECF No. 1. The original Complaint alleged four detention-related incidents occurring between 2017 and 2021 and asserted claims under the First, Eighth, and Fourteenth Amendments, as well as California's Bane Civil Rights Act, Cal. Civ. Code § 52.1. *Id.* at 2, 5.

On May 11, 2023, the Court dismissed the case without prejudice for failure to timely effect service. ECF No. 39. Plaintiff appealed. On April 29, 2025, the Court of Appeals vacated the dismissal and remanded with instructions to forward process to the U.S. Marshals Service ("USMS") for service on the County. ECF No. 59-1 at 2. The

mandate was issued on May 21, 2025, and the next day this Court directed USMS service. ECF Nos. 59, 60. On June 5, 2025, Plaintiff filed a return reflecting USMS service on a County representative on May 28, 2025. ECF No. 61.

***2. First Amended Complaint***

On July 7, 2025, Plaintiff filed a First Amended Complaint ("FAC"). ECF No. 64. The FAC alleged five incidents occurring between approximately 2017 and December 2024, involving among other things, denied writing materials, ignored medical requests, threatened detention, and physical assault. *Id*. at 4–6. Based on these five incidents, the FAC asserted claims for: (1) retaliation in violation of the First Amendment; (2) denial of access to the courts in violation of the First Amendment; (3) deliberate indifference to serious medical needs in violation of the Eighth Amendment; (4) failure to protect in violation of the Eighth Amendment; (5) unconstitutional conditions of confinement in violation of the Eighth Amendment; (6) municipal liability pursuant to *Monell*; (7) violation of the Bane Civil Rights Act; (8) intentional infliction of emotional distress; and (9) battery. *Id*. at 6–13.[1]

On July 18, 2025, the County filed a motion to dismiss Plaintiff's FAC. ECF No. 68. On November 21, 2025, the Court granted the County's motion and dismissed Plaintiff's state law claims for failure to comply with the California Government Claims Act and Plaintiff's federal § 1983 claims for failure to state a claim. ECF No. 75. On November 24, 2025, Plaintiff moved for reconsideration of the dismissal of his state law claims. ECF No. 76. The County filed a response on December 15, 2025. ECF No. 79.

***3. Second Amended Complaint***

On January 4, 2026, Plaintiff filed a SAC, the operative pleading. ECF No. 80. The SAC asserts claims pursuant to § 1983 against the County and various Doe defendants for: (1) First Amendment retaliation; (2) Eighth and Fourteenth Amendment conditions of

---

[1] Plaintiff's federal constitutional claims were brought pursuant to 42 U.S.C. § 1983.

confinement; (3) Eighth and Fourteenth Amendment deliberate indifference to medical needs; (4) First Amendment denial of access to the courts; (5) Eighth and Fourteenth Amendment failure to protect; and (6) *Monell* liability. SAC ¶¶ 22–28.

On January 20, 2026, the County filed the instant motion to dismiss. ECF No. 83. Plaintiff filed an opposition, and the County filed a reply. ECF Nos. 84; 85.

## II. LEGAL STANDARD

### A. Motion for Reconsideration

The Federal Rules of Civil Procedure do not expressly recognize a "motion for reconsideration." *See Evans Hotels, LLC v. United Here! Loc. 30*, No. 3:18-CV-02763-LL-AHG, 2022 WL 272009, at *3 (S.D. Cal. Jan. 28, 2022). Instead, "[a] 'motion for reconsideration' is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within [the time period permitted by the Rule]."[2] *Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001) (citing *United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992)). "Otherwise, [the motion] is treated as a Rule 60(b) motion for relief from a judgment or order." *Id.* at 899.

Reconsideration under Rule 59(e) is an "extraordinary remedy, to be used sparingly[.]" *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.* (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Similarly, under Federal Rule of Civil Procedure 60(b), a moving party "is entitled to relief from judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other

---

[2] Rule 59(e) provides that: "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from the operation of the judgment." *Am. Ironworks*, 248 F.3d at 899. "With respect to 'other reason[s] justifying relief,' courts have held that [i]n civil cases, a motion to reconsider must set forth some valid reason why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Evans Hotels*, 2022 WL 272009, at *4 (internal quotation marks omitted).

**B. Pleading Standards**

***1. Rule 8***

Federal Rule of Civil Procedure 8 requires every "pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Instead, "[t]he Supreme Court's decision in *Ashcroft v. Iqbal* supplies the guidelines for applying Rule 8[.]" *Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026). Under *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Iqbal*, 556 U.S. at 678. "The goal [of Rule 8] is to provide sufficient notice so the parties and the court can focus litigation on the merits of a claim." *Gibson*, 165 F.4th at 1287 (internal quotation marks omitted).

***2. Rule 12(b)(6)***

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Plaintiff proceeds pro se. The Court therefore construes his pleading liberally and affords him the benefit of the doubt. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Even so, Plaintiff's "pro se status does not relieve [him] of conformity to the pleading rules." *Scott v. Meta Platforms Inc.*, No. 25-CV-09955-TSH, 2026 WL 593341, at *7 (N.D. Cal. Mar. 3, 2026).

## III. ANALYSIS

### A. Reconsideration of the Dismissal of Plaintiff's State Law Claims

Plaintiff moves for reconsideration of the Court's November 21, 2025 Order dismissing the state law claims asserted in his FAC for failure to comply with the claim presentation requirement of the California Government Claims Act. *See* ECF No. 76.

#### *1. California Government Claims Act Requirements*

The California Government Claims Act, Cal. Gov't Code § 810 et seq., "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public

entities and public employees for torts." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099, 1104–05 (2015) (internal quotation marks omitted). "In order to bring suit for damages against a public entity, the California Government Claims Act requires that a plaintiff give notice to the public entity with written claims and that the public entity reject those claims." *Brewster v. City of Los Angeles*, No. EDCV 14-2257 JGB (SPx), 2020 WL 5991621, at *11 (C.D. Cal. July 14, 2020) (citing Cal. Gov. Code §§ 945.4, 905, 910); *see also Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 732 (Ct. App. 1992) ("The presentation of a claim to a public entity and its rejection are prerequisites to maintaining suit against the entity."). Under Section 911.2 of the California Government Code, "[c]laims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action." *Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1118 (Ct. App. 2020) (quoting *Cal. Rest. Mgmt. Sys. v. City of San Diego*, 195 Cal. App. 4th 1581, 1591 (2011)).

Section 910 of the California Government Code requires that claim to include, among other things, "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," Cal. Gov't Code § 910(c); "[a] general description of the … injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," *id.* § 910(d); and "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known," *id.* § 910(e). "If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer [or motion for judgment on the pleadings] if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434 (Ct. App. 1988) (quoting *Nelson v. State*, 139 Cal. App. 3d 72, 79 (Ct. App. 1982)).

///

### 2. *November 21, 2025 Order*

In its November 21, 2025 Order, the Court took judicial notice of the government claim Plaintiff submitted to the County, signed June 9, 2021. ECF Nos. 68-2 at 5–6; 75 at 8. Plaintiff's claim identified the date of occurrence as between October 6 and October 10, 2020, the location as the "San Diego Central Jail / First Holding Cell Area," and described the event only as: "San Diego County Deputy violated my constitutional rights." ECF No. 68-2 at 5. The Court concluded that Plaintiff's claim failed to satisfy the requirements of the California Government Claims Act because it provided only a date and time range, location, and generalized allegation of a constitutional violation, without describing what allegedly occurred. ECF No. 75 at 9. Additionally, the Court held Plaintiff had not explained how the claim he filed adequately gave the County notice of any state law claims asserted in his FAC. *Id.*

### 3. *Basis for Reconsideration*

In the present motion, Plaintiff seeks reconsideration on the grounds that equitable tolling, the continuing-violation doctrine, and the delayed-discovery rule excuse his failure to satisfy the claim presentation requirement. *See* ECF No. 76.

Plaintiff has not shown that reconsideration is warranted here. As the County notes, Plaintiff's motion relies on several purported authorities that are either erroneously cited or nonexistent. *See* ECF No. 76 at 5–6. Authorities that cannot be located at the citations supplied—and, in some instances, do not appear to exist—do not establish clear error, an intervening change in controlling law, or any other basis for reconsideration. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.").

Nor does Plaintiff otherwise identify a proper basis for reconsideration. Instead, Plaintiff's motion improperly raises arguments that he either already made or could have made in opposition to the County's motion to dismiss the FAC. See ECF No. 71 at 4 (arguing that the Court should apply the "continuing violation" doctrine to "override" the

Government Claims Act deadline and that equitable tolling is appropriate). "'[A] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled.'" *Evans Hotel*, 2022 WL 272009, at *4 (quoting *United States v. Kauwe*, 467 F. Supp. 3d 940, 945 (D. Nev. 2020)); *see also Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n.5 (2008) (noting that a motion for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment") (internal quotation marks omitted); *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1058 (9th Cir. 2020) (holding that the district court did not abuse its discretion in denying reconsideration where the plaintiff used the motion to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment") (internal quotation marks omitted); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A [motion for reconsideration] may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (emphasis in original).

Plaintiff's renewed reliance on the continuing violation doctrine and equitable tolling does not satisfy that standard. As the Court already held in its November 21, 2025 Order, Plaintiff's FAC did not "allege any other assaults or a pattern of conduct amounting to a single continuing violation[.]" ECF No. 75 at 9. And as to equitable tolling, California law provides that "the doctrine of equitable tolling cannot be invoked to suspend [the California Government Claims Act's] six-month deadline for filing a prerequisite government claim." *Willis*, 48 Cal. App. 5th at 1121. "The six-month period of section 911.2 is not a statute of limitations to which tolling rules might apply." *Id.*

To the extent Plaintiff now invokes the delayed-discovery rule, that argument likewise could have been raised earlier. In any event, Plaintiff appears to invoke delayed discovery in connection with the accrual of his *Monell* claim, not his state law claims. *See* ECF No. 76 at 9 ("[T]he accrual of the cause of action for a *Monell* (pattern or practice) claim, or the full scope of a state tort claim predicated on a systematic failure, is subject to

the doctrine of delayed discovery."). California has, however, "rejected the *Monell* rule," *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013), and Plaintiff does not explain how the delayed discovery rule would excuse his failure to comply with the Government Claims Act's claim presentation requirement as to his state law claims.

Finally, Plaintiff's reliance on a government claim submitted on September 27, 2024 also does not warrant reconsideration. *See* ECF No. 76 at 14–17. The September 27, 2024 claim was available to Plaintiff before the Court issued its prior order. It is not newly discovered evidence and does not provide a proper basis for reconsideration. Plaintiff does not explain why he could not have raised this submission in opposition to the County's motion to dismiss the FAC. Nor would the claim alter the Court's analysis. Plaintiff's FAC alleged incidents occurring between 2017 and 2021, as well as one incident that allegedly occurred in December 2024. FAC at 4–6. As to the incidents alleged to have occurred between 2017 and 2021, the September 24, 2024 claim was submitted years after accrual. As to the incident allegedly occurring in December 2024, the September 24, 2024 claim was submitted before the incident allegedly occurred. Accordingly, even if considered, the September 24, 2024 claim would not establish compliance with the Government Claims Act's claim presentation requirement or otherwise provide a basis for reconsideration. *See* Cal. Gov't Code § 911.2(a).

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for reconsideration.

**B. The County's Motion to Dismiss the FAC**

The County first moves to dismiss Plaintiff's FAC under the doctrine of laches and for failure to prosecute. *See* ECF No. 83-1 at 12–16. Setting aside that the FAC is not the operative pleading, the County's laches and failure to prosecute arguments rest on the same premise: that Plaintiff failed to timely serve the County. *Id.* at 13 ("The record demonstrates nearly two years of attempts to serve the County and little to no explanation of this substantial delay."). The Court already rejected the County's service-based challenge in its November 21, 2025 Order. ECF No. 75 at 6. The County's recasting of the service issue

does not alter the Court's analysis and the Court declines to dismiss on these grounds.

**C. The County's Motion to Dismiss the SAC**

The County moves to dismiss the SAC, arguing that: (1) the SAC violates Rule 8 by failing to tie specific incidents to specific claims; (2) Plaintiff cannot proceed under the Eighth Amendment because he was a pretrial detainee, not a convicted prisoner; (3) Plaintiff's First Amendment retaliation and Eighth and Fourteenth Amendment conditions of confinement claims are time-barred; and (4) all of Plaintiff's claims fail under Rule 12(b)(6). ECF No. 83-1 at 17–28. The Court addresses these arguments, in turn, below.

***1. Rule 8***

The County first argues Plaintiff's SAC violates the requirements of Rule 8 because it fails to specify which incident corresponds to each claim. ECF No. 83-1 at 17. In response, Plaintiff emphasizes that the SAC is not unduly lengthy and includes approximate dates, times, and factual details. ECF No. 84 at 9–10. But Plaintiff does not address the County's central Rule 8 argument: that the SAC recites multiple detention incidents and then asserts claims without tying particular facts to particular causes of action.

Under Ninth Circuit precedent, a complaint undermines Rule 8 when it is written in a "shotgun" manner. *Gibson*, 165 F.4th at 1289 ("This case provides us with an opportunity to make clear that district courts do not have to accept such shotgun pleadings."). The Ninth Circuit has identified four "main types of shotgun pleadings:"

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* Here, Plaintiff's SAC recites five separate detention incidents, each occurring on a

different date and involving different, albeit sometimes similar, alleged conduct. Yet the SAC asserts six claims without clearly identifying which incident, or which facts within each incident, support each cause of action.

Claim 3 illustrates this problem. In Claim 3, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by "failing to treat his fractured elbow and refusing to provide a wheelchair or ambulance." SAC ¶ 24. Plaintiff also references that he allegedly suffered "acute nerve pain" and "prolonged physical suffering caused by freezing temperatures and lack of mobility accommodations." *Id.* But the factual allegations potentially bearing on Claim 3 appear across several different incidents. The "First Incident" alleges that jail staff refused to call an ambulance after Plaintiff was released. *Id.* ¶ 9. The "Third Incident" alleges that Plaintiff complained his arm was in "extreme pain," that jail staff refused to call an ambulance upon his release, and that doctors later confirmed he had fractured his left elbow. *Id.* ¶ 11. The "Fourth Incident" alleges that Plaintiff requested a wheelchair and that a deputy grabbed his fractured arm and twisted his wrist. *Id.* ¶ 12. And the "Fifth Incident" alleges that Plaintiff was denied mobility accommodations and medical bedding while being transported to the Vista detention facility. *Id.* ¶ 13. Yet the SAC never clearly identifies the actual factual basis for Claim 3. It is unclear whether Plaintiff's claims are based on one of these incidents, all of them, or some combination of these incidents. Instead, the SAC leaves Defendants and the Court to piece together which facts from which incident correspond to this cause of action.

Claim 5 provides another illustration of this deficiency. Plaintiff asserts a failure-to-protect claim "evidenced by the threats reported in 2020 to 2023." *Id.* ¶ 26. But the SAC's factual narrative contains several different allegations that could conceivably relate to this claim. The "First Incident" alleges that Plaintiff reported a fear of attack before being transferred to George Bailey. *Id.* ¶ 9. The "Second Incident" alleges that a gang leader claimed inmates controlled the George Bailey facility and imposed restrictions on Plaintiff's movement while deputies allegedly failed to intervene. *Id.* ¶ 10. The "Fourth Incident" alleges that Plaintiff observed a jail facility was "under de facto gang control"

and that "inmates and deputies" referred to a system of "racial segregation and gang-enforced rules" as "politics." *Id.* ¶ 12. Again, the SAC does not clearly identify the factual incidents Claim 5 rests on.

The SAC's use of Doe defendants compounds this uncertainty. The SAC identifies Doe Defendants 1 through 20 collectively as individuals "who were acting under color of state law as sheriff deputies and medical staff at the San Diego Downtown Jail, George Bailey Detention Facility, and Vista Detention Facility." SAC ¶ 1. But apart from identifying Doe No. 2 as a supervisor, the SAC does not connect any particular Doe defendant to any particular incident, act, or claim. Instead, the SAC refers generally to "deputies," a "male voice," a "nurse," and "jail staff," among other unidentified individuals. *Id.* ¶¶ 9–13. This leaves unclear the number of Doe defendants at issue, which Doe defendant allegedly engaged in which conduct, and which claim or claims that conduct is intended to support. *See Lomeli v. Cnty. of San Diego*, 637 F. Supp. 3d 1046, 1057 (S.D. Cal. 2022) ("Plaintiffs may refer to unknown defendants as 'Does' at this stage, [but] must nevertheless allege specific facts showing how each particular doe defendant violated [her] rights.") (internal quotation marks omitted); *Keavney v. Cnty. of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020) ("A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights.") (internal quotation marks omitted).

As the Ninth Circuit has made clear that "permitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8." *Gibson*, 165 F.4th at 1290. "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Id.* at 1289; *see also Perez v. Cnty. of Kern*, No. 1:25-cv-00358-CDB, No. 1:25-CV-00358-CDB, 2026 WL 1614077, at *12 (E.D. Cal. June 4, 2026) ("[T]he Ninth Circuit permits district courts to dismiss shotgun pleadings under Rule 8 where '[a]ll details evaporate when [Plaintiffs] had to link their facts to their causes of action.'") (quoting

*Gibson*, 165 F.4th at 1291); *Watt v. HAL Antillen N.V.*, No. 2:24-CV-00155-RSL, 2024 WL 4436966, at *2 (W.D. Wash. Oct. 7, 2024) ("[A] complaint may be an impermissible shotgun pleading if it recites a collection of general factual allegations at the outset but fails to connect those facts to the elements comprising plaintiff's causes of action, instead simply incorporating every antecedent allegation by reference.").

Accordingly, the Court **GRANTS** the County's motion to dismiss the SAC for failure to comply with Rule 8 **WITH LEAVE TO AMEND.** *See Gibson*, 165 F.4th at 1290 ("[W]hen district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood."). The SAC's failure to comply with Rule 8 is itself a sufficient basis for dismissal. *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit."). Nevertheless, because the County also challenges the sufficiency of Plaintiff's claims on other grounds, the Court exercises its discretion in addressing certain of those arguments in the alternative below.

***2. Eighth/Fourteenth Amendments***

The County next argues that Plaintiff's claims fall under the Fourteenth Amendment, not the Eighth Amendment. ECF No. 83-1 at 16–17. Plaintiff acknowledges that as a pretrial detainee, "his claims regarding medical care and conditions of confinement are governed by the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment." ECF No. 84 at 13.

The Court agrees that "[c]laims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *see also Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1069–70 (9th Cir. 2016) (holding a pretrial detainee's failure to protect claim arises "under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause."); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) ("Because [plaintiff] was a pretrial detainee and not a

convicted prisoner at the time of the claimed wrongful conduct, his § 1983 action for inadequate medical treatment arises from the due process clause of the fourteenth amendment and not from the eighth amendment prohibition against cruel and unusual punishment.”).

Accordingly, the Court **GRANTS** the County’s motion and **DISMISSES** Claims 2, 3, and 5 to the extent they are based on the Eighth Amendment.

### *3. Statute of Limitations/Failure to State a Claim*

The County next argues Plaintiff’s First Amendment retaliation and Fourteenth Amendment conditions of confinement claims (Claims 1 and 2) are barred by the applicable statute of limitations and that all of Plaintiff’s claims fail to state a claim under Rule 12(b)(6). ECF No. 83-1 at 17–28. As explained above, the SAC does not clearly identify which factual allegations support which causes of action. Without that clarification, the Court cannot meaningfully assess either the statute-of-limitations arguments or the County’s Rule 12(b)(6) arguments without speculating as to the factual basis for each claim. The Court therefore declines to reach those arguments at this stage. The County may renew them, as appropriate, in response to any amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff’s motion for reconsideration.

The Court further **GRANTS IN PART** and **DENIES IN PART** the County’s motion to dismiss as follows:

1. The Court **DENIES** the County’s motion to dismiss the FAC under the doctrines of laches and for failure to prosecute.

2. The Court **GRANTS** the County’s motion to dismiss Claims 2, 3, and 5 to the extent they are based on the Eighth Amendment only.

3. The Court **GRANTS** the County’s motion to dismiss the SAC for failure to comply with Rule 8 **WITH LEAVE TO AMEND.** The leave granted is limited. Plaintiff may file a Third Amended Complaint (“TAC”) only to cure the Rule 8 deficiencies

identified in this Order. Plaintiff may not add any defendant, claim, or incident not alleged in the SAC. Plaintiff may, however: (1) substitute the true name of a defendant for a Doe defendant already named in the SAC; (2) provide additional factual detail concerning the incidents alleged in the SAC; (3) identify which factual allegations support each claim and which Defendant or Defendants are alleged to have committed the acts or omissions underlying that claim; and (4) choose to drop, narrow, or focus the defendants, claims, or incidents at issue.

If Plaintiff chooses to file a TAC, he must do so within **forty-five (45) days** of the date of this Order. If Plaintiff files a TAC that exceeds the scope of leave granted by this Order, the pleading may be stricken. Failure to timely file an amended complaint may result in dismissal of this action without further notice.

In light of this disposition, the Court further **DENIES AS MOOT** Plaintiff's motion for leave to designate the SAC as the operative pleading. [ECF No. 82].

**IT IS SO ORDERED.**

Dated: July 23, 2026

Hon. Robert S. Huie
United States District Judge